193 N.J. Super. 413 (1984)
474 A.2d 1085
ANN SPEZIALE AND JOHN SPEZIALE, PLAINTIFFS-RESPONDENTS,
v.
NEWARK HOUSING AUTHORITY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 1984.
Decided March 22, 1984.
*414 Before Judges ANTELL and JOELSON.
Kaplowitz and Wise, attorneys for appellant (Steven Wise on the brief).
Goldberger, Mandell, Seligsohn & O'Connor, attorneys for respondents (Irwin B. Seligsohn on the brief).
The opinion of the court was delivered by JOELSON, J.A.D.
Defendant appeals from a judgment in favor of plaintiff Ann Speziale for damages sustained by reason of a fall while she was attempting to enter a laundry room on defendant's premises.[1] *415 According to plaintiff's testimony at trial, plaintiff, who was a resident of a housing project owned and operated by defendant, went at approximately 10:15 a.m. on June 4, 1979 to the laundry room which was maintained for the use of the residents of the project. She was 62 years of age at the time. She entered the laundry room by descending concrete steps to a "pit" and then ascending one step into the laundry room itself. She placed a few articles of clothing into a dryer and returned to her apartment.
About three-quarters of an hour later, she went back through the rain to retrieve her clothing. As she descended the steps, she noticed that there were approximately two or three inches of water in the pit and that a drain in the floor was "bubbling." She testified that this condition had not existed earlier when she went to place her clothing in the dryer. In attempting to avoid stepping into the water, plaintiff placed her right foot on the last step of the concrete staircase and her left foot on the single step leading to the laundry room. That step contained a metal plate. Her left foot slipped on the metal plate, causing her to fall. She stated that both the metal plate and her shoes were wet. She was unable to state the distance between the two steps, but her testimony makes it clear that she did not have to jump or leap to negotiate the distance.
In the brief submitted on its behalf, defendant alleges that the trial court erred in not granting defendant's motion for involuntary dismissal at the end of plaintiff's case. We agree and, therefore, reverse.
It is undisputed that since defendant is a public entity, the provisions of the Tort Claims Act, N.J.S.A. 59:1-1 et seq., apply. As provided by N.J.S.A. 59:4-2:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of *416 the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred....
The term "dangerous condition" as used in N.J.S.A. 59:4-2 is defined in N.J.S.A. 59:4-1 a as:
a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.
In denying defendant's motion for an involuntary dismissal at the close of plaintiff's case, the trial judge said that he would charge the jury that in order to find liability the jurors "have to find there was a dangerous condition, and the definition of that doesn't help the plaintiff because it's a dangerous condition only if there is ... a substantial risk of injury when such property is used with due care in the manner in which it is reasonably foreseeable it will be used." As promised, when he delivered his charge to the jury the judge quoted the statutory definition of "dangerous condition" as it appears in N.J.S.A. 59:4-1 a. The first special interrogatory which the trial judge submitted to the jury asked whether there was a dangerous condition at the entrance to the laundry room on the day of the accident, and the jury answered "yes."
We believe that the trial judge was correct in his opinion that the definition of dangerous condition "doesn't help the plaintiff." Accordingly, defendant's motion for involuntary dismissal should have been granted. In Polyard v. Terry, 160 N.J. Super. 497, 508 (App.Div. 1978), aff'd o.b. 79 N.J. 547 (1979), we stated:
When a motion for involuntary dismissal is made it requires the trial judge to make a preliminary determination as to whether the alleged condition is in fact a dangerous one within the meaning of the statute. Otherwise the legislatively-decreed restrictive approach to liability would be illusory.
Since Polyard was affirmed by the Supreme Court "substantially for the reasons expressed in the opinion of the Appellate Division," see 79 N.J. at 548 we regard the Appellate Division opinion as having been adopted as the product of the Supreme Court. Thus, we are bound by it. Namm v. Charles E. Frosst *417 & Co., 178 N.J. Super. 19, 35 (App.Div. 1981). Therefore, we conclude that the trial judge should have made a preliminary determination as to the existence of a dangerous condition, and have granted an involuntary dismissal accordingly.
In Polyard, we did not disregard R. 4:37-2(b) which requires that a motion for involuntary dismissal at the completion of a plaintiff's case "shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." See Dolson v. Anastasia, 55 N.J. 2 (1969); Bozza v. Vornado, Inc., 42 N.J. 355 (1964); Bell v. Eastern Beef Co., 42 N.J. 126 (1964). However, we said that "in applying the stated test the judge must consider the declared legislative policy which shapes the application and interpretation of the Tort Claims Act." Polyard v. Terry, supra 160 N.J. Super. at 506. In the case now under review we likewise find that, giving plaintiff the benefit of legitimate favorable inferences, she failed to sustain her burden of proving that the condition of the property presented a substantial risk of injury when used with due care as required by N.J.S.A. 59:9-1 a. There are situations where the mere use of the property at all, absent the emergent need to do so, in itself constitutes a lack of due care. A person in plaintiff's position here could have been reasonably expected to wait until the water condition abated, or to have sought assistance. Thus, the condition of the property did not create "a substantial risk of injury when ... used with due care in a manner in which it is reasonably foreseeable that it will be used" within the intendment of N.J.S.A. 59:4-1 a. In construing the provisions of the Tort Claims Act, we must "favor the immunity provisions over the liability provisions." Camburn v. Marlboro Psychiatric Hospital, 162 N.J. Super. 323, 326 (App.Div. 1978), certif. granted 79 N.J. 476 (1979).[2]
*418 By the foregoing, we do not suggest that if the plaintiff is contributorily negligent, a public entity will thereby automatically obtain immunity under N.J.S.A. 59:4-2 for injury caused by a condition of its property. To the extent that Lytle v. Newark, 166 N.J. Super. 191 (Law Div. 1979), so suggests we do not follow it. Such an interpretation would run counter to N.J.S.A. 59:9-4 which provides:
Contributory negligence shall not bar recovery in an action by any party or his legal representative to recover damages to the extent permitted under this act if such negligence was not greater than the negligence of the party against whom recovery is sought, but any damages sustained shall be diminished by the percentage of negligence attributable to the person recovering....
It might be argued that N.J.S.A. 59:9-4 should be read only with reference to those liability provisions of the Tort Claims Act, other than N.J.S.A. 59:4-2, which do not deal with injuries caused by a condition of public property. However, since there is no such limitation to be found in N.J.S.A. 59:9-4, it should be read in pari materia with all sections of the Tort Claims Act, including N.J.S.A. 59:4-2, if such a reading can reasonably and consistently be accomplished.
Since our Tort Claims Act is modeled upon the comparable California statute, Cal.Gov't. Code § 810 et seq., we may look for guidance to the interpretive decision on the subject in the courts of that state. Kleinke v. Ocean City, 147 N.J. Super. 575, 579 (App.Div. 1977); Burg v. State, 147 N.J. Super. 316, 322 (App.Div. 1977), certif. den. 75 N.J. 11 (1977). Cal.Gov't.Code § 830(a) also provides that a dangerous condition means a "condition of property that creates a substantial ... risk of injury when such property ... is used with due care in a manner in which it is reasonably foreseeable that it will be used." The Law Revision Commission comment following this section of the statute provides that:
Although the condition will not be considered dangerous ... unless it creates a hazard to those who foreseeably will use the property ... with due care, this does not require that the injured person prove that he was free from contributory negligence.... The plaintiff is, however, required to establish that the condition was one that created a hazard to a person who foreseeably would use the property ... with due care.
*419 The California courts have construed this subdivision of the statute in accordance with the above-quoted comment. Thus, in Holmes v. Oakland City, 260 Cal. App.2d 378, 67 Cal. Rptr. 197 (1968), the court stated:
the test is whether the condition created a substantial risk of harm to persons, generally, who would use the public property with due care in a foreseeable manner. [Citations omitted]. Accordingly, in order to prove his case, plaintiff must show "that the condition was one that created a hazard to a person who foreseeably would use the property ... with due care." ... [Citations omitted]. He need not, however, allege that he was free from contributory negligence.... [67 Cal. Rptr. at 203; emphasis in original]
Accord Jordan v. Long Beach City, 17 Cal. App.3d 878, 95 Cal. Rptr. 246, 249 (Ct.App. 1971); Callahan v. City & County of San Francisco, 249 Cal. App.2d 696, 57 Cal. Rptr. 639, 644 (1967).
In the case we now review, the matter was submitted to the jury which found that defendant was 90% negligent, and plaintiff 10% negligent. We have already indicated that the case should not have gone to the jury at all because of plaintiff's failure to prove "dangerous condition" as defined by N.J.S.A. 59:4-1 a. However, we wish to make it clear that there may be cases where a plaintiff may be able to establish the existence of a dangerous condition even though he personally may have been contributorily negligent. For instance, let us assume that a county constructs a straight road which abruptly, without warning signs or indicia, veers at a 45 degree angle. That condition could be said to create a substantial risk of injury when used in the darkness with due care by drivers generally in a manner reasonably foreseeable that it will be used. However, the individual driver who traverses such a road at an excessive rate of speed while embracing a companion may still be found culpable of contributory negligence by a jury. In summary, if the risk of injury is "substantial" as required by N.J.S.A. 59:4-1 a, a public entity may forfeit its immunity, but it may nevertheless defend against the claim of liability on the ground of plaintiff's contributory negligence just as any other defendant may do.
*420 Defendant has made additional claims of error. However, in view of the foregoing we need not deal with them. Since no remand is ordered herein, no guidance to the trial court on a retrial is necessary.
Reversed.
NOTES
[1] Her husband, John Speziale, sued per quod but was apparently awarded no damages.
[2] Shepherd's New Jersey citation contains no further reference to this case.