712 A.2d 1101

DENNIS GARRISON, PLAINTIFF–RESPONDENT, v. TOWNSHIP OF MIDDLETOWN, DEFENDANT–APPELLANT,NEW JERSEY TRANSIT, DEFENDANT.

Argued September 22, 1997—Decided July 7, 1998.

*Bernard M. Reilly* argued the cause for appellant (*Dowd & Reilly*, attorneys).

*Steven L. Kessel* argued the cause for respondent (*Drazin and Warshaw*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The New Jersey Tort Claims Act (Act), *N.J.S.A.* 59:4–1a, defines a "dangerous condition" on the property of a public entity as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." This appeal questions the extent to which the reasonableness of a claimant's use of property is relevant to the determination whether the condition of the public entity's property was dangerous. The Law Division granted the motion for summary judgment of defendant, Township of Middletown (Middletown). In an unreported opinion, the Appellate Division reversed. We granted Middletown's petition for certification, 147 *N.J.* 579, 688 *A.*2d 1054 (1997). We reverse the judgment of the Appellate Division and reinstate the Law Division's judgment of dismissal.

I.

Because this matter arises on defendant's motion for summary judgment, we accept plaintiff's version of the facts and give plaintiff the benefit of all favorable inferences. *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 666 *A.*2d 146 (1995); *Judson v. Peoples Bank & Trust Co.*, 17 *N.J.* 67, 110 *A.*2d 24 (1954). The underlying accident occurred on a Middletown park-

ing lot adjacent to a New Jersey Transit station. At night the lot is illuminated. Middletown also owns thirty-five parks, many of which have football fields. Two of the parks have lighting.

Plaintiff, Dennis Garrison, was injured at about 9:30 p.m. on November 19, 1989, while playing touch football on the parking lot. No one on behalf of Middletown gave permission to the players to play football on the parking lot. During previous football games on the parking lot, patrolling police officers had not told the players to stop. Plaintiff and his friends used the lot because it was lighted and the lines demarcating the parking spaces served as boundaries.

Before the game began, plaintiff knew that the area on which he was playing had an uneven surface or declivity. In that area, which was about twenty-one feet from one of the "sidelines," the paved part of the lot was one and one-half inches lower than adjacent broken gravel.

Plaintiff, who was just a few weeks away from his seventeenth birthday at the time of the accident, nonetheless decided to play night football on the lot. He and his friends agreed to try to avoid the uneven pavement. They also agreed not to start any plays in that area. After they had been playing for about an hour, however, plaintiff tried to rush the quarterback on the opposing team. While trying to evade a blocker, plaintiff ran from the pavement to the adjacent area, planted his foot on the uneven surface, and damaged his knee.

Plaintiff sued both Middletown and New Jersey Transit alleging that they had negligently allowed a dangerous condition to exist in the parking lot and that the condition caused his injury. Both defendants moved for summary judgment. Ultimately, the Law Division granted both motions. Although plaintiff did not appeal from the judgment of dismissal in favor of New Jersey Transit, he did appeal from the judgment in favor of Middletown.

In granting Middletown's motion, the Law Division reasoned that Middletown neither intended nor anticipated plaintiff's use of

the parking lot, that plaintiff knew that the pavement was uneven in the area where the accident occurred, and that the uneven pavement was not a "dangerous condition" as defined by the Act.

The Appellate Division reversed, determining that the Law Division had misconstrued the Act by focusing on the intended use of the parking lot. According to the Appellate Division, plaintiff's use of the property as a football field was foreseeable. Although Middletown could assert plaintiff's negligence as an affirmative defense, his negligence would not constitute a lack of due care sufficient to bar his claim. The Appellate Division concluded that plaintiff presented sufficient evidence of Middletown's actual or constructive knowledge of the defective condition, and of the unreasonableness of Middletown's actions concerning the defective condition, to preclude summary judgment for Middletown.

## II.

■ The Act establishes a system for public entities in which immunity from tort liability is the general rule and liability is the exception. *Bombace v. City of Newark*, 125 *N.J.* 361, 372, 593 *A.*2d 335 (1991). Thus, the Act sets forth as its purpose:

[I]t is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carrying out the above legislative declaration.

[*N.J.S.A.* 59:1–2.]

To recover under the Act, a plaintiff must prove, among other things, that at the time of the injury the public entity's property was in a dangerous condition, that the condition created a foreseeable risk of the kind of injury that occurred, and that the condition proximately caused the injury. *N.J.S.A.* 59:4–2. Even then, the Act imposes no liability on a public entity if "the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." *N.J.S.A.* 59:4–2.

Essential to the determination of a public entity's tort liability is the definition of the statutory term "dangerous condition." The

Act defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *N.J.S.A.* 59:4–1a. By its terms, the Act explicitly requires that a dangerous condition can be found to exist only when the public entity's property "is used with due care."

The issue in the instant case is not whether Middletown intended the parking lot to be used for night football games. Rather, the issue is whether the declivity in the parking lot created a substantial risk of injury when the property was used with due care. So stated, our analysis focuses not on plaintiff's individual conduct, but on whether playing night football on a paved parking lot with a known declivity constitutes a use of the property with the care that was due.

■ If a public entity's property is dangerous only when used without due care, the property is not in a "dangerous condition." Accordingly, in *Speziale v. Newark Housing Auth.*, 193 *N.J.Super.* 413, 417, 474 *A.*2d 1085 (App.Div.1984), the Appellate Division reversed a jury verdict for the plaintiff because she failed to show that two to three inches of rain water on the floor created a substantial risk of injury when the property was used with due care. The plaintiff slipped and fell while attempting to step from a staircase over a pit filled with water onto a single step leading into a laundry room. *Id.* at 415, 474 *A.*2d 1085. Because the plaintiff could have sought assistance or waited for the water to abate, she had not used the property with due care. *Id.* at 417, 474 *A.*2d 1085. Hence, the condition of the property did not constitute a dangerous condition, and the case should not have been submitted to the jury for a determination of contributory negligence. *Ibid.*

Although the plaintiff's lack of due care negated a finding of a dangerous condition, the Appellate Division emphasized that a plaintiff's contributory negligence will not ordinarily immunize a public entity from liability. *Id.* at 418, 474 *A.*2d 1085. The Appellate Division reasoned that such a conclusion would be

contrary to *N.J.S.A.* 59:9-4, which provides that a plaintiff's negligence shall not bar her claim unless her negligence is greater than that of the public entity. *Id.* at 418–19, 474 *A.*2d 1085. The court indicated that, when a condition is dangerous to all users, the plaintiff may be able to establish the existence of a dangerous condition even though he may have been contributorily negligent:

> For instance, let us assume that a county constructs a straight road which abruptly, without warning signs or indicia, veers at a 45 degree angle. That condition could be said to create a substantial risk of injury when used in the darkness with due care by driver generally in a manner reasonably foreseeable that it will be used. However, the individual driver who traverses such a road at an excessive rate of speed while embracing a companion may still be found culpable of contributory negligence by a jury.
>
> [*Id.* at 419, 474 *A.*2d 1085.]

Similarly, in *Hawes v. New Jersey Dep't of Transp.*, 232 *N.J.Super.* 160, 164, 556 *A.*2d 1224 (Law Div.), *aff'd*, 232 *N.J.Super.* 159, 556 *A.*2d 1224 (App.Div.1988), the Law Division granted summary judgment in favor of New Jersey Transit and held that unprotected railroad tracks did not constitute a dangerous condition. In that case, a train struck and killed the decedent as he tried to cross a railroad track. *Id.* at 161, 556 *A.*2d 1224. Plaintiff, the administratrix of decedent's estate, argued that New Jersey Transit, although it knew trespassers regularly used the crossing, created a dangerous condition by failing to erect a fence or take other protective measures. *Ibid.* The Law Division rejected the argument, finding that anyone using the railroad's property with due care would not encounter a substantial risk of harm. As the court stated,

> common sense dictates that a person using due care would make certain no trains were approaching before walking across a railroad track. Exercising even a minimum of care, a person should be able to eliminate any chance of being hit by a train. Accordingly, [the railroad's] property did not constitute a dangerous condition.
>
> [*Id.* at 164, 556 *A.*2d 1224.]

Finally, in *Lytle v. City of Newark*, 166 *N.J.Super.* 191, 192, 399 *A.*2d 333 (Law Div.1979), the parties' automobiles collided in an intersection in which the traffic lights were not working. Aware that the traffic lights did not work, plaintiff nonetheless proceeded

through the intersection after she saw the traffic light a block ahead turn green. *Id.* at 195, 399 *A.2d* 333. She claimed that the broken lights constituted a dangerous condition. *Id.* at 193, 399 *A.2d* 333. The Law Division granted a judgment of dismissal in favor of the city of Newark. It concluded that the manner in which she proceeded "indicates that the property was not used with due care. As such, a dangerous condition could not have existed." *Ibid.* Additionally, the Law Division noted that the plaintiff failed to demonstrate "how the absence of a traffic control signal in any way contributed to the accident." *Ibid.*

■ Because the California Tort Claims Act was the model for the Act, we often consider interpretations of that Act when interpreting our own. *Levin v. County of Salem*, 133 *N.J.* 35, 46, 626 *A.2d* 1091 (1993). Consideration of California law is appropriate here because the definition of "dangerous condition" in the California statute, *Cal. Gov't Code* § 830a, is nearly identical to that in *N.J.S.A.* 59:4–1a. The California Law Revision Commission's Comment to *Cal. Gov't Code* § 830 explains:

> A condition is not dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons.
>
> * * *
>
> The plaintiff is required to establish that the condition was one that created a hazard to a person who foreseeably would use the property or adjacent property with due care.

Pursuant to that legislative mandate, California courts, like those in New Jersey, have refused to find that property is in a dangerous condition if the property poses a substantial risk of injury only to those who engage in objectively unreasonable conduct. For example, in *Fredette v. City of Long Beach*, the plaintiff injured himself when he dove into shallow water from a pier in the final stages of reconstruction. 187 *Cal.App.*3d 122, 127–28, 231 *Cal.Rptr.* 598 (1986). He argued that the absence of barricades or warning signs on the pier created a dangerous

condition. *Id.* at 129, 231 *Cal.Rptr.* 598. The California court rejected that argument, explaining:

> The negligence of a plaintiff-user of public property ... is a defense which may be asserted by a public entity; it has no bearing upon the determination of a "dangerous condition" in the first instance. So long as the plaintiff-user can establish that a condition of the property creates a substantial risk to any foreseeable user of the public property who uses it with due care, he has successfully alleged the existence of a dangerous condition regardless of his lack of due care.
>
> [*Id.* at 131, 231 *Cal.Rptr.* 598 (citations omitted).]

On the other hand, if "it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not dangerous." *Ibid.* In sustaining a jury verdict for the city of Long Beach, the court found that "the physical characteristics" of the pier notified "persons exercising due care" that the activity in which the plaintiff participated was, "in and of itself, a hazardous activity that should be avoided. We think it clear that no member of the public may ignore the notice which the condition itself provides." *Id.* at 132, 231 *Cal.Rptr.* 598. The court concluded that the city of Long Beach had not created a dangerous condition, and that its failure to erect barricades or post signs was not the proximate cause of plaintiff's injuries. *Id.* at 131, 231 *Cal.Rptr.* 598.

In *Rombalski v. City of Laguna Beach*, 213 *Cal.App.*3d 842, 849, 261 *Cal.Rptr.* 820 (1989), a thirteen-year old plaintiff was rendered a quadriplegic after diving from a rock on a public beach. Affirming summary judgment for the municipality of Laguna Beach, the Court of Appeal held as a matter of law that the rock was not a dangerous condition because the plaintiff could not show that he had exercised due care. *Id.* at 849–50, 261 *Cal.Rptr.* 820. The court reasoned that "[i]n *Fredette*, as in this case, the condition of the rock only become dangerous when misused." *Id.* at 850, 261 *Cal.Rptr.* 820. The dive, moreover, was a hazardous recreational activity for which the city was immune. *Id.* at 851–52, 261 *Cal.Rptr.* 820.

Finally, in *Mathews v. City of Cerritos*, 2 *Cal.App.* 4th 1380, 1382, 4 *Cal.Rptr.*2d 16 (1992), the eight-year old plaintiff injured himself while attempting to ride his bicycle down a steep hill in a city park when the grass was wet with dew. The boy knew the hill was too steep and dangerous for bike-riding. *Id.* at 1383, 4 *Cal.Rptr.*2d 16. In affirming summary judgment for the city of Cerritos, the Court of Appeal reasoned that the condition of the park did not constitute a dangerous condition:

> Reasonably foreseeable use with due care, as an element in defining whether property is in a dangerous condition, refers to use by the public generally, not the contributory negligence of the particular plaintiff who comes before the court; the particular plaintiff's contributory negligence is a matter of defense. Nevertheless, the plaintiff has the burden to establish that the condition is one which creates a hazard to persons who foreseeably would use the property with due care.

> \* \* \*

> Applying these principles here, we conclude that the danger of riding a bicycle down a very steep, wet, grassy hill is obvious from the appearance of the property itself, even to children exercising a lower standard of care.

[*Id.* at 1384–85, 4 *Cal.Rptr.*2d 16.]

■ The California cases confirm that "used with due care" implies a standard of objective reasonableness. A use that is not objectively reasonable from the community perspective is not one "with due care." To this extent, "used with due care" refers not to the conduct of the injured party, but to the objectively reasonable use by the public generally. *See* California Tort Liability Practice § 3.21, at 321 (3rd ed. 1992) (stating that " 'used with due care' requirement refers to use by the public generally"); California Jury Instruction Civil § 11.54, at 473 (7th ed. 1986) (stating that " 'used with due care' refers to whether the condition would result in injuries when used with due care by the public generally. It does not refer to the care used by any person in connection with this particular accident.")

■ Consistent with California's interpretation, the Appellate Division has held that the existence of a dangerous condition depends on "whether the property creates a substantial risk of injury *'to persons generally,* who would use the property with due

care in a foreseeable manner.'" *Daniel v. New Jersey Dep't of Transp.*, 239 *N.J.Super.* 563, 587, 571 *A.*2d 1329 (App.Div.) (citations omitted) (emphasis in original), *certif. denied*, 122 *N.J.* 325, 585 *A.*2d 343 (1990); *see also Speziale, supra*, 193 *N.J.Super.* at 419, 474 *A.*2d 1085 ("[T]he test is whether the condition created a substantial risk of harm to persons, generally, who would use the public property with due care in a foreseeable manner (emphasis omitted) (quoting *Holmes v. Oakland City*, 260 *Cal.App.* 378, 67 *Cal.Rptr.* 197 (1968)).") When the property poses a danger to all users, an injured party may establish that property was in a dangerous condition notwithstanding his or her failure to exercise due care. *See, e.g., Furey v. County of Ocean*, 273 *N.J.Super.* 300, 310–11, 641 *A.*2d 1091 (App.Div.) (holding that drop-off at shoulder of road ranging between two to six inches could be dangerous condition because "roadway was not safe for drivers in general;" hence, "it is irrelevant why decedent's vehicle left the road"), *certif. denied*, 138 *N.J.* 272, 649 *A.*2d 1291 (1994); *Daniel, supra*, 239 *N.J.Super.* at 590, 571 *A.*2d 1329 (holding that two road projects which created ramp with tendency to catapult automobiles across highway median could create dangerous condition because "a driver may make contact with a median notwithstanding his or her exercise of due care"). In such cases the plaintiff's negligence more appropriately relates not to the determination whether the property was dangerous, but to the issues of proximate causation or comparative negligence.

As the California opinions illustrate, courts concentrate on the activity in which the plaintiff engaged. The purpose of the evaluation is to ascertain whether the plaintiff had engaged in an activity that is so objectively unreasonable that liability for resulting injuries may not be attributed to the condition of the property. The focus of the inquiry is not on the details of the plaintiff's activity, but on the nature of the activity itself. Although the inquiry "does not refer to the actual activities of the plaintiff," *Daniel, supra*, 239 *N.J.Super.* at 587, 571 *A.*2d 1329, it invites examination whether the plaintiff's "conduct while engaging in a foreseeable activity amounts to an objectively reasonable use of the property." *Levin, supra*, 133 *N.J.* at 59, 626 *A.*2d 1091 (Stein,

J., dissenting); *see Speaks v. Jersey City Hous. Auth.*, 193 *N.J.Super.* 405, 411, 474 *A.2d* 1081 (App.Div.1984) ("the reasonable user requirement [of *N.J.S.A.* 59:4–1a] of equal necessity, refers to the conduct of an individual").

■ In the present case, the record does not establish that the declivity was dangerous to all foreseeable users of the parking lot. Nothing indicates that the declivity posed a risk to. commuters or to other persons who parked their cars or walked to the train station. In brief, the condition of the property was not dangerous for anyone who used it "with due care."

Furthermore, that plaintiff's use was not "with due care" is manifest. Touch football on a poorly-lit uneven railroad-station parking lot constitutes a use of public property that is as a matter of law "without due care." The fact that plaintiff was injured does not prove that the condition of the property posed a risk of harm to anyone who exercised due care in the use of the property. Even under the generous test applicable to motions for summary judgment, plaintiff has not proved that the property when used with due care created a substantial risk of injury to the general public.

### III.

Our concurring colleagues agree with the dismissal of plaintiff's action but would do so because the declivity was not a proximate cause of plaintiff's injury. In short, they would judge the unreasonableness of the plaintiff's conduct exclusively with regard to proximate causation or comparative negligence. (Conc. op. at 295, 712 *A.2d* at 1108). That analysis, however, ignores the relevance of proof of the use of the property with due care as part of establishing that the property was in a dangerous condition. To that extent, the concurrence departs from the plain language and purpose of the Act.

An examination of the objective reasonableness of the plaintiff's use of the property under *N.J.S.A.* 59:4–1a does not conflict with

an examination of that use under *N.J.S.A.* 59:9–4, which pertains to the comparative negligence of the parties. *N.J.S.A.* 59:9–4 provides that a plaintiff's negligence is not a bar to recovery unless it is greater than the public entity's negligence. *Daniel, supra,* 239 *N.J.Super.* at 588, 571 *A.*2d 1329 (plaintiff may be able to establish existence of dangerous condition even though he personally may have been negligent); *Speziale, supra,* 193 *N.J.Super.* at 419, 474 *A.*2d 1085 (same). In a sense, proof of a plaintiff's due care, like proof of the physical condition of property, is a threshold requirement. That plaintiff's conduct relates also to proximate causation, *N.J.S.A.* 59:4–2, and comparative negligence, *N.J.S.A.* 59:9–4, does not preclude its relevance to the determination whether the property was in a dangerous condition.

When construing the Act, courts seek to follow the legislative mandate favoring the immunity of public entities. *Bombace, supra,* 125 *N.J.* at 373, 593 *A.*2d 335. The Legislature could have written the Act to create more expansive liability for public entities. Specifically, the Legislature could have provided that the plaintiff's due care is irrelevant to the inquiry whether property is in a "dangerous condition." Alternatively, the Legislature could have limited consideration of a plaintiff's use of the public property to issues of causation or comparative negligence. A statute so drafted would comport with our concurring colleagues' construction of the Act. The Legislature, however, took a different course. It wrote the "due care" requirement into the definition of "dangerous condition." In brief, the Legislature made a conscious policy choice to exclude public entities from liability for people who engage in unreasonable activities on public property.

Because of our disposition in this case, we need not resolve whether the declivity posed a substantial risk of injury, whether the declivity was the proximate cause of plaintiff's injury, whether Middletown had notice of the declivity, or whether Middletown's actions were "palpably unreasonable."

The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

STEIN, J., concurring.

I join in the Court's judgment reversing the judgment of the Appellate Division. The Court's analysis and rationale, however, are flawed and will generate confusion and imprecision in the conduct of Tort Claims Act (Act) litigation.

Misreading the statute, the Court holds that for purposes of public entity liability under the Act a condition of public property is not "dangerous" unless the specific plaintiff that brought the litigation satisfies the "threshold requirement" that he or she used due care when encountering the property. *Ante* at 293–94, 712 A.2d at 1107. Thus, under the Court's analysis a large, deep, unmarked and obviously hazardous pothole in a public-entity-owned parking lot would constitute a "dangerous condition" in a lawsuit brought by a person who tripped on the pothole while exercising due care, but the identical pothole would not constitute a dangerous condition in a different suit against the same public entity brought by a person who tripped on the pothole while roller-blading backwards across the lot. The Court claims that its contradictory and illogical standard for identifying a "dangerous condition" of public property is faithful to the Act. The Court's analysis disregards, however, those other provisions of the Act that do attach relevance to the specific conduct of the plaintiff in the litigation. For example, *N.J.S.A.* 59:9–4 provides that a plaintiff's contributory negligence not greater than that of the public entity does not bar recovery under the Act and requires the fact finder to allocate fault between the plaintiff and the public entity. *N.J.S.A.* 59:4–2 imposes liability on a public entity based on a dangerous condition of property only if the plaintiff's injury was proximately caused by the dangerous condition. Those sections of the Act, not the definition of "dangerous condition," are designed to accord significance to the conduct of the specific plaintiff and to his or her lack of due care.

The Court's faulty analysis does not affect the result in this appeal because the record reveals a failure of proof either that the condition of public property at issue here was a proximate cause of

plaintiff's injury or that the public entity's lack of action to address that condition was palpably unreasonable. *See N.J.S.A.* 59:4–2. Nevertheless, the Court's strained effort to define a "dangerous condition" of property by focusing not on the foreseeable hazard posed by the property to careful users but rather on the carelessness of the specific plaintiff retards the orderly development of our Tort Claims Act jurisprudence and diminishes the persuasiveness of the Court's disposition.

I

As summarized in the Court's opinion, *ante* at 284–86, 712 *A.*2d at 1102–03, plaintiff's claim is based on an injury he sustained while playing touch football at night with friends on an illuminated township parking lot located adjacent to a New Jersey Transit station. Neither party disputes, for purposes of the Township's summary judgment motion, that plaintiff was injured when he rushed the passer and stumbled on an uneven portion of the lot— an area where the paved portion was one and one-half inches lower than an adjacent broken gravel surface. Plaintiff was aware of the uneven surface. He and his friends noticed it before the football game began and agreed that they would try to avoid that area of the lot.

After discovery was completed the Law Division granted defendants' motions for summary judgment, reasoning that the uneven surface of the parking lot did not constitute a dangerous condition as a matter of law because the touch football game was not an intended use of the property. Reversing, the Appellate Division panel observed that the same injury plaintiff experienced "could have been sustained by, for example, a commuter who had parked his car in the lot and then run, or even walked, to catch a train, falling at the point where the repaved and unrepaved portions of the lot met," and noting that "any person using the parking lot for its intended use could have suffered the same mischance that plaintiff did because the danger lay not in the use itself but rather in the defective condition."

The Court now reverses and holds that "a dangerous condition can be found to exist" only when the plaintiff uses the public entity's property with "due care," *ante* at 287, 712 *A*.2d at 1103, emphasizing that public property is not "dangerous," as that term is used in *N.J.S.A.* 59:4-1a, if someone is injured while failing to exercise due care. *Ante* at 293, 712 *A*.2d at 1107.

Apparently recognizing the incongruity of an analysis that makes the dangerousness of property depend not on its general condition but rather on a specific plaintiff's use, the Court qualifies its holding by observing that to some extent " 'used with due care' refers not to the conduct of the injured party, but to objectively reasonable use by the public generally." *Ante* at 291, 712 *A*.2d at 1106. Adding further confusion to its analysis, the Court back-pedals and concedes that "[w]hen the property poses a danger to all users, an injured party may establish that property was in a dangerous condition notwithstanding his or her failure to exercise due care." *Ante* at 292, 712 *A*.2d at 1106. But the Court discards that more rational approach when it insists that to decide these cases "courts must first evaluate the activity in which the plaintiff engaged." *Ante* at 292, 712 *A*.2d at 1106.

After demanding a plaintiff-specific analysis to determine if public property is dangerous, the Court thereafter abandons that inquiry, determining that in this case

> the record does not establish that the declivity was dangerous to all foreseeable users of the parking lot. Nothing indicates that the declivity posed a risk to such persons as commuters or to other persons who parked their cars or walked to the train station. In brief, the condition of the property was not dangerous for one who used it "with due care."

*Ante* at 293, 712 *A*.2d at 1106.

Without acknowledging its inconsistency, the Court effectively decides this case by concluding as a matter of law that the municipal parking lot did not constitute a dangerous condition because it posed no risk to *any* person using due care, thereby confirming that plaintiff's lack of due care is irrelevant in deter-

mining whether the parking lot was dangerous. If the record had contained abundant evidence of commuters tripping and falling daily on the very same declivity, I infer that the Court would concede that the property was dangerous irrespective of plaintiff's lack of due care.

## II

The Court supports its plaintiff-specific understanding of the term "dangerous condition" by reliance on decisional law in this state, as well as on cases decided by courts in California on whose Tort Claims Act New Jersey's statute was modeled. *See Levin v. County of Salem*, 133 *N.J.* 35, 46, 626 *A.*2d 1091 (1993). However, neither jurisdiction's decisional law supports the Court's unorthodox interpretation of the term "dangerous condition" as used in the Act. The statute defines a dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *N.J.S.A.* 59:4–1a. The interpretative issue is readily apparent: does the statute contemplate, as the Appellate Division concluded, that a dangerous condition exists if it poses a risk of injury to any person using the property with due care in a reasonably foreseeable manner, or does it contemplate, as the Court concludes, that no matter how hazardous a condition of property may be it is not a "dangerous condition" unless the specific plaintiff used the property with due care in a reasonably foreseeable manner. The plain language of the statute, which includes no reference to the specific plaintiff's use of the property, clearly supports the Appellate Division's interpretation that focuses on whether public property poses a substantial risk of injury to *any* person using the property with due care in a reasonably foreseeable manner. Because of the Court's acknowledged reliance on precedent to sustain its interpretation, I focus on the same cases but reach a different conclusion.

The first case discussed by the Court, *Speziale v. Newark Housing Authority*, 193 *N.J.Super.* 413, 474 *A.*2d 1085 (App.Div. 1984), expressly contradicts the Court's analysis. There, the plaintiff "slipped and fell while attempting to step from a staircase over a pit filled with water onto a single step leading into a laundry room." *Ante* at 287, 712 *A.*2d at 1103–04. Reversing a jury verdict for the plaintiff, the Appellate Division concluded that the plaintiff had failed to prove the existence of a dangerous condition of property, concluding that the flooded condition posed no substantial risk of injury because "[a] person in plaintiff's position here could have been reasonably expected to wait until the water condition abated, or to have sought assistance." 193 *N.J.Super.* at 417, 474 *A.*2d 1085. The court added, however, that a public entity was not immune from liability under the "dangerous condition" section of the Act merely because the specific plaintiff was contributorily negligent. *Id.* at 418, 474 *A.*2d 1085. The Appellate Division quoted with approval the California Law Revision Commission's comment to the corresponding section of the California statute, *Cal. Gov't Code* § 830(a):

> Although the condition will not be considered dangerous ... unless it creates a hazard to those who foreseeably will use the property ... with due care, this does not require that the injured person prove that he was free from contributory negligence.... The plaintiff is, however, required to establish that the condition was one that created a hazard to a person who foreseeably would use the property ... with due care.
>
> [*Ibid.*]

*Hawes v. New Jersey Department of Transportation*, 232 *N.J.Super.* 160, 556 *A.*2d 1224 (Law Div.), *aff'd*, 232 *N.J.Super.* 159, 556 *A.*2d 1224 (App.Div.1988), also relied on by the Court, does not support the Court's analysis. There, the trial court granted the defendant's motion for summary judgment in a suit brought by the administratrix of the estate of a decedent killed by one of the defendant's trains when he attempted to cross a railroad track. Focusing on a hypothetical user rather than the plaintiff, the court concluded that the property did not constitute a dangerous condition because "it is clear ... that if a person were to use the defendant's property with due care, he would encounter

no substantial risk of harm." *Id.* at 164, 556 *A.*2d 1224. But the Law Division expressly rejected the defendant's contention that a dangerous condition cannot exist if the specific plaintiff does not use due care: "The defendant also seems to imply that due care is a condition precedent to a finding that property is dangerous. This position is untenable." *Id.* at 161 n. 1, 556 *A.*2d 1224 (citing *Speziale, supra,* 193 *N.J.Super.* 413, 474 *A.*2d 1085).

*Lytle v. City of Newark,* 166 *N.J.Super.* 191, 399 *A.*2d 333 (Law Div.1979), another Law Division opinion relied on by the Court, appears to support the Court's construction of the statute. In *Lytle,* the plaintiff was injured in a collision with another car in an intersection at which the traffic lights were inoperative. Concluding that even without functioning traffic lights the intersection would not have been dangerous if the drivers had used due care, the court concluded that the specific plaintiff's lack of due care precluded a finding that a dangerous condition existed. *Id.* at 195, 399 *A.*2d 333. Notably, the Appellate Division in *Speziale, supra,* on which the Court also relies, expressly disapproved of *Lytle* to the extent that it suggests that no dangerous condition can exist if a plaintiff is contributorily negligent. 193 *N.J.Super.* at 418, 474 *A.*2d 1085.

In *Daniel v. New Jersey Department of Transportation,* 239 *N.J.Super.* 563, 571 *A.*2d 1329 (App.Div.), *certif. denied,* 122 *N.J.* 325, 585 *A.*2d 343 (1990), also cited by the Court, the Appellate Division's analysis flatly contradicts the Court's holding that a dangerous condition cannot exist if the specific plaintiff fails to use due care. There, the court sustained a jury verdict in favor of the executrix of the decedent's estate and against the New Jersey Department of Transportation (DOT). The decedent, Barbara Rhem, was killed while she was a front-seat passenger in a car traveling eastbound on Route 30 driven by her cousin, William Rhem, when a car driven by George Jones, Jr. traveling west-bound on Route 30 became airborne, crossed the median, and collided head-on with the Rhem vehicle. In asserting a claim against the State, the plaintiff contended that a dangerous condi-

tion existed by virtue of DOT's reduction of the curb height in 1970 from eight to two inches and the asphalt paving of the median in 1981 that allegedly created a "ramp-like" effect that caused Jones's vehicle to be catapulted into the eastbound lane. *Id.* at 571, 571 *A.*2d 1329.

In discussing the statutory term "dangerous condition," the Appellate Division was critical of the trial court's charge informing the jury that the statutory phrase "due care" referred to the conduct of the driver of the Rhem vehicle.   The court stated:

> As we understand the statute, the phrase "used with due care" does not refer to the actual activities of the parties.   Rather, the focus is on the condition of the property itself.   In deciding whether a dangerous condition exists, the fact-finder must determine whether the property creates a substantial risk of injury *"to persons generally,* who would use the property with due care in a foreseeable manner." *Holmes v. Oakland City,* 260 *Cal.App.*2d 378, 387–388, 67 *Cal.Rptr.* 197, 203 (App.Ct.1968) [Emphasis in original].   Accordingly, in order to prove his case, "plaintiff must show 'that the condition was one that created a hazard to a person who foreseeably would use the property ... with due care.'" *Ibid.*
>
> [239 *N.J.Super.* at 586–87, 571 *A.*2d 1329 (citation omitted).]

The court added that it would not be feasible for a public entity to predict "every imaginable way in which its property can or will be used." *Id.* at 587, 571 *A.*2d 1329.   Therefore, the court noted,

> [t]he Legislature has dealt with this problem by creating a fictitious person, a reasonable person of ordinary prudence.   Under the statutory definition, a dangerous condition exists if the property poses a substantial risk of injury when it is used in a reasonably prudent manner in a foreseeable way. *To that extent, the reasonable user requirement does not refer to the actual activities of the plaintiff or others.*   Rather, it constitutes a personification of a community ideal of reasonable behavior.
>
> In that context, the trial court erred when it referred solely to the Rhems' behavior in determining whether the property presented a dangerous condition. *Contrary to the instruction given in this case, the actual conduct of the plaintiff is wholly irrelevant to this inquiry.*   Thus, a plaintiff "may be able to establish the existence of a dangerous condition even though he personally may have been contributorily negligent." *Speziale v. Newark Hous. Auth.,* 193 *N.J.Super.* at 419, 474 *A.*2d 1085.   Under the Act, "[c]ontributory negligence shall not bar recovery...." *N.J.S.A.* 59:9–4.   A person who negligently contributes to the injury he sustains is not barred from bringing suit as long as it can be shown that there was a defect in the public property and that the harm would have occurred even had he exercised due care. *Ibid.*
>
> [*Id.* at 587–88, 571 *A.*2d 1329 (emphasis added).]

In *Furey v. County of Ocean,* 273 *N.J.Super.* 300, 641 *A.*2d 1091 (App.Div.), *certif. denied,* 138 *N.J.* 272, 649 *A.*2d 1291 (1994), also relied on by the Court, the Appellate Division upheld a jury verdict in favor of the surviving spouse of a volunteer fireman who was killed when his vehicle went out of control and struck a tree. His estate contended that a two to four inch drop-off from the paved road to the unpaved shoulder was a "dangerous condition" that proximately caused his death. In response to the County's contention that the plaintiff was unable to establish why the decedent's vehicle left the roadway, the Appellate Division emphasized that "[i]n determining if the drop-off created a dangerous condition, it is irrelevant why decedent's vehicle left the road." *Id.* at 310, 641 *A.*2d 1091. The court observed that what was relevant was whether the condition of the road and shoulder posed a substantial risk of injury to a driver using due care. *Ibid.* The court referred to the "used with due care" language of *N.J.S.A.* 59:4–1a and cited *Daniel, supra,* 239 *N.J.Super.* at 587, 571 *A.*2d 1329, with approval, noting that the *Daniel* court had "rejected the argument that the actual conduct of the plaintiff would be relevant in determining if a dangerous condition existed." 273 *N.J.Super.* at 311, 641 *A.*2d 1091.

The Court's reliance on California cases that squarely contradict its holding is bewildering. In *Fredette v. City of Long Beach,* 187 *Cal.App.*3d 122, 231 *Cal.Rptr.* 598 (1986), the plaintiff was rendered a quadriplegic when he dove into shallow water from a pier undergoing reconstruction, and he contended that the absence of warning signs or barricades on the pier created a "dangerous condition." Section 830(a) of the California Government Code defines dangerous condition as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used," a definition substantially identical to that contained in our Tort Claims Act. Although sustaining a jury verdict in favor of the defendant, the *Fredette* court held that

the plaintiff's lack of due care had no bearing on whether a dangerous condition existed:

> It is well settled, however, that the negligence or lack of due care exhibited by a plaintiff-user of public property does not necessarily defeat his cause of action. The Law Revision Commission's Comment to section 830 provides: "Although the condition will not be considered dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property *with due care,* [emphasis in original] this does not require that the injured person prove that he was free from contributory negligence. Contributory negligence is a matter of defense under subdivision (b) of Section 815. The plaintiff is, however, required to establish that the condition was one that *created a hazard to a person who foreseeably would use the property or adjacent property with due care."*
>
> *The negligence of a plaintiff-user of public property, therefore, is a defense which may be asserted by a public entity; it has no bearing upon the determination of a 'dangerous condition' in the first instance.* (See *Callahan v. City and County of San Francisco* (1967) 249 *Cal.App.*2d 696, 702–703, 57 *Cal.Rptr.* 639; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 3.12, pp. 198–201.) *So long as a plaintiff-user can establish that a condition of the property creates a substantial risk to any foreseeable user of the public property who uses it with due care, he has successfully alleged the existence of a dangerous condition regardless of his personal lack of due care.* If, however, it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not "dangerous" within the meaning of section 830, subdivision (a).
>
> [231 *Cal.Rptr.* at 602 (emphasis added).]

The Court also relies on *Mathews v. City of Cerritos*, 2 *Cal. App.*4th 1380, 4 *Cal.Rptr.*2d 16 (1992). In *Mathews,* the eight-year-old plaintiff sustained personal injuries when he attempted to ride his bicycle down a very steep hill in a public park, lost control, and was thrown into a block wall. 4 *Cal.Rptr.*2d at 17. Although upholding the trial court's grant of summary judgment on the ground that the plaintiff had not established the existence of a dangerous condition, the Court of Appeals, adhering to California precedent, expressly stated that the plaintiff's due care was not an element of the definition of dangerous condition:

> Reasonably foreseeable use with due care, as an element in defining whether property is in a dangerous condition, refers to use by the public generally, not the contributory negligence of the particular plaintiff who comes before the court; the particular plaintiff's contributory negligence is a matter of defense. Nevertheless, the plaintiff has the burden to establish that the condition is one which creates a hazard to persons who foreseeably would use the property with due care.

[*Id.* at 18.]

Although not acknowledged by the Court's opinion, numerous California cases, consistent with *Fredette, supra,* state unequivocally that the specific plaintiff's lack of due care is irrelevant to the determination of the existence of a dangerous condition. *See, e.g., Alexander v. State,* 159 *Cal.App.*3d 890, 205 *Cal.Rptr.* 758, 763 (1984) (" 'Instructions defining for the jury the statutory concept of a dangerous condition should avoid creating any implication that due care on the part of the plaintiff or of third persons must be established by plaintiff as a condition of recovery.' ")(quoting Van Alstyne, *Cal. Government Tort Liability Practice* § 3.85, at 315 (1980)); *Swaner v. City of Santa Monica,* 150 *Cal.App.*3d 789, 198 *Cal.Rptr.* 208, 213 (1984) ("The negligence of a plaintiff-user of public property, therefore, is a defense which may be asserted by a public entity; it has no bearing upon the determination of a 'dangerous condition' in the first instance."); *Holmes v. City of Oakland,* 260 *Cal.App.*2d 378, 67 *Cal.Rptr.* 197, 203 (1968) ("[T]he test is whether the condition creates a substantial risk of harm to *persons, generally,* who would use the public property with due care in a foreseeable manner. . . . [The plaintiff] need not, however, allege that he was free from contributory negligence since contributory negligence is a matter of defense. . . ."); *Callahan v. City & County of San Francisco,* 249 *Cal.App.*2d 696, 57 *Cal.Rptr.* 639, 644 (1967) ("Plaintiff does not say, and is not required to say, that the driver with whom she was riding was exercising due care. . . . There is logic, as well as the quoted commentaries, in favor of appellant's position that section 830, subdivision (a) defines dangerous condition with relation to the general public and not to a particular driver or user or person coming into contact with public property.").

In the face of overwhelmingly contradictory precedent both in our cases and in California decisions, I find mystifying the Court's intransigent demand that determination of a "dangerous condition" must depend on the plaintiff's conduct, *ante* at 292, 712 *A.*2d at 1106, and its insistence on "the relevance of proof of the use of the property with due care as part of establishing that the

property was in a dangerous condition." *Ante* at 293, 712 *A*.2d at 1107. Despite those broad assertions, the Court seemingly rejects its own rationale when it declares that if property poses a danger to all users, "an injured party may establish that property was in a dangerous condition notwithstanding his or her failure to use due care." *Ante* at 292, 712 *A*.2d at 1106. The Court's inconsistent positions concerning the significance of a plaintiff's conduct raises grave doubts about the cogency and durability of the Court's analytical approach.

Moreover, the Court holds that playing touch football at night on an uneven parking lot constitutes a use that is as a "matter of law 'without due care.'" *Ante* at 293, 712 *A*.2d at 1107. That holding implies that girls who play hop scotch on a city sidewalk, or boys who play stick ball in a city street at night or stoop ball on the city sidewalks in front of their homes lack "due care" as a matter of law. In such cases, even if the city were on notice of a defective condition of its property, such as a sinkhole under the area or a leaking gas main, the youthful user of the streets would be precluded from recovery because the Court disapproved of the game "as a matter of law."

The Court's formulation is thus both illogical and certain to pose analytical difficulties for trial courts. For example, in a suit by an automobile passenger injured in part because of an obviously dangerous condition of public property, but in a factual setting in which the driver of her car failed to use due care, the Court's rationale could be understood to preclude a finding that a dangerous condition existed. *Cf. Callahan, supra,* 57 *Cal.Rptr.* at 644 (posing similar hypothetical and criticizing rule defining dangerous condition in terms of plaintiff's or third person's due care because "[s]uch a holding would bar liability of the governmental unit in many cases affecting wholly blameless parties."). Nor is the Court's analysis necessary to vindicate the legislative objectives underlying the Tort Claims Act because the public entity can assert a plaintiff's lack of due care or inappropriate use of public

property in support of a defense based on comparative negligence or lack of proximate cause.

In my view, the decisions of the Appellate Division in *Furey, supra,* 273 *N.J.Super.* at 310–12, 641 *A.*2d 1091, *Daniel, supra,* 239 *N.J.Super.* at 586–88, 571 *A.*2d 1329, and *Speziale, supra,* 193 *N.J.Super.* at 418–19, 474 *A.*2d 1085, as well as the analogous holdings of the California cases regarding the proper role of "due care" in the determination of the existence of a "dangerous condition," fairly reflect the legislative purpose underlying the definition of dangerous condition in the New Jersey Tort Claims Act. If the public property is safe when used by any person with due care and a risk of harm is created only when foreseeable users fail to exercise due care, then the property is not "dangerous" within the meaning of *N.J.S.A.* 59:4–1a. However, if a plaintiff can establish that a condition of the property creates a substantial risk to any foreseeable user of the property who uses it with due care, that plaintiff has established the existence of a dangerous condition irrespective of the nature of plaintiff's use of the property or the plaintiff's lack of due care. In either case the conduct of the specific plaintiff is not relevant to the determination of a "dangerous condition," but rather bears on causation and on any defense of comparative negligence raised by the public entity.

Plaintiff has submitted evidence of a physical defect in the Township's parking lot. As the Appellate Division observed, the type of injury sustained by plaintiff could have been sustained by a commuter running or even walking to catch a train. Accordingly, if the trial court determined that the condition of the public property created a *substantial* risk of injury to a foreseeable user exercising due care, summary judgment on the ground that plaintiff could not establish a dangerous condition of the property would be improper.

### III

Nevertheless, I would sustain the grant of summary judgment in favor of the Township on the basis that, even assuming a

"dangerous condition" existed, the condition as a matter of law was not a proximate cause of plaintiff's injury.

In the context of the Tort Claims Act, proximate cause has been defined as "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Polyard v. Terry,* 160 *N.J.Super.* 497, 511, 390 *A.*2d 653 (App.Div.)(quoting *Fernandez v. Baruch,* 96 *N.J.Super.* 125, 140, 232 *A.*2d 661 (App.Div.1967), *rev'd on other grounds,* 52 *N.J.* 127, 244 *A.*2d 109 (1968)), *aff'd,* 79 *N.J.* 547, 401 *A.*2d 532 (1979). The element of proximate cause in the Act, however, is essentially no different than the element of proximate cause within our common law negligence jurisprudence. On several occasions this Court has declared that proximate causation is not a simple factual inquiry of cause and effect, but rather that "[p]roximate or legal causation is that combination of 'logic, common sense, justice, policy and precedent' that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." *People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 *N.J.* 246, 264, 495 *A.*2d 107 (1985) (quoting *Caputzal v. Lindsay Co.,* 48 *N.J.* 69, 77–78, 222 *A.*2d 513 (1966)); *see also Kuzmicz v. Ivy Hill Park Apartments, Inc.* 147 *N.J.* 510, 540–41, 688 *A.*2d 1018 (1997) (Stein, J., dissenting) (same); *Contey v. New Jersey Bell Tel. Co.,* 136 *N.J.* 582, 587, 643 *A.*2d 1005 (1994) ("We have . . . defined the limits of proximate cause as an instrument of fairness and policy.") (internal quotation omitted); *Brown v. United States Stove Co.,* 98 *N.J.* 155, 173, 484 *A.*2d 1234 (1984) ("The assessment as to whether conduct can be considered sufficiently causally connected to accidental harm so as to justify the imposition of liability also implicates concerns for overall fairness and sound public policy."); *Rappaport v. Nichols,* 31 *N.J.* 188, 205, 156 *A.*2d 1 (1959) ("We are fully mindful that policy considerations and the balancing of the conflicting interests are the truly vital factors in the molding and application of the common law principles of negligence and proximate causation.").

Ordinarily, issues of proximate cause are considered to be jury questions. *See Martin v. Bengue, Inc.,* 25 *N.J.* 359, 374, 136 *A.*2d 626 (1957). However, in unique cases our courts have rejected the imposition of liability as a matter of law for highly extraordinary consequences. *See, e.g., Caputzal, supra,* 48 *N.J.* at 77–80, 222 *A.*2d 513 (holding that even if defect in water softener caused rusty discoloration of water, manufacturer was not liable to plaintiff who sustained idiosyncratic and highly extraordinary heart attack brought on by fright at sight of discolored water); *Glaser v. Hackensack Water Co.,* 49 *N.J.Super.* 591, 597–602, 141 *A.*2d 117 (App.Div.1958) (holding that water company whose employee entered plaintiff's garage without notice to read meter was not liable to plaintiff who became frightened for safety of infant daughter and injured herself while running downstairs).

In *Caputzal, supra,* 48 *N.J.* at 78, 222 *A.*2d 513, the Court quoted Dean Prosser:

"As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

This limitation is sometimes, although rather infrequently, one of the fact of causation. More often it is purely one of policy, of our more or less inadequately expressed ideas of what justice demands, or of administrative possibility and convenience, none of which have any connection with questions of causation at all." (*Prosser,* [*Torts* § 30, at 240–41 (3d ed.1964) ] ).

As an element of a claim against a public entity under *N.J.S.A.* 59:4–2, proximate causation must be evaluated in the context of the overall policies underlying the Tort Claims Act. Although the Legislature enacted the Tort Claims Act in 1972 as a response to mounting judicial disfavor with the doctrine of sovereign immunity, *Rochinsky v. New Jersey Dep't of Transp.,* 110 *N.J.* 399, 404, 541 *A.*2d 1029 (1988), this Court has consistently stated that immunity under the Tort Claims Act "is the rule, and liability the exception." *Bombace v. City of Newark,* 125 *N.J.* 361, 372, 593 *A.*2d 335 (1991). The Court has found that the legislative policy expressed in the Act was "to establish immunity as the general rule." *Id.* at 373, 593 *A.*2d 335; *see also Manna v. State,* 129 *N.J.*

341, 347, 609 A.2d 757 (1992) ("Immunity is the dominant consideration."); *Rochinsky, supra,* 110 *N.J.* at 408, 541 A.2d 1029 (same).

Applying the public policy of the Act to the related elements of proximate causation and foreseeable injury, I note that there are circumstances in which the use of public property is so different and far-removed from the use for which the property is intended, and in which the injury suffered is so much more severe than that which foreseeably would have been sustained in the course of an intended use of the property, that the plaintiff's use rather than the dangerous condition must reasonably be viewed as the proximate cause of the injury. In such a case, summary judgment would not be improper. *See, e.g., Lay v. Kansas Dep't of Transp.,* 23 *Kan.App.*2d 211, 928 *P.*2d 920, 924–25 (1996) (holding that State's negligent failure to warn motorists of country road-highway intersection beyond blind curve was not proximate cause of injury sustained where plaintiff rolled over his automobile while driving too fast to negotiate curve, despite plaintiff's allegation that he would have slowed down if intersection warning was posted); *Bartell v. Palos Verdes Peninsula Sch. Dist.,* 83 *Cal. App.*3d 492, 147 *Cal.Rptr.* 898, 899 (1978) (affirming dismissal of cause of action where plaintiff's son suffered fatal injuries when he fell in public school playground while playing game in which he was "slung from the end of a rope while riding a skateboard."). *But see Callahan, supra,* 57 *Cal.Rptr.* 639 (reversing dismissal of cause of action where injured plaintiff was passenger in car that was drag racing on "negligently maintained" public highway).

I conclude that this is such a case. That disposition is not intended as a criticism of the decision by Dennis Garrison and his friends to play touch football in an illuminated, public and largely vacant commuter parking lot. Their use of the public property was not an unreasonable one. However, it was far-removed from the intended use of the property and significantly magnified the risk of injury posed by any surface irregularities in the lot. The sharp cuts and changes of direction inherent in playing touch football undoubtedly contributed both to plaintiff's fall and to the

severity of his injury. Moreover, the record contains minimal evidence that the Township knew that the parking lot regularly was used for touch football and no evidence that the Township acquiesced in that use over an extended time period. Although the surface declivity in the lot may have been a cause in fact of plaintiff's injury, in view of the legislative policy underlying the Act it cannot be deemed the legal or proximate cause.

## IV

Finally, summary judgment also could be sustained on the ground that plaintiff failed to establish a jury question on whether the Township's conduct was palpably unreasonable. The requirement set forth in the Act that a public entity's conduct be "palpably unreasonable" requires a plaintiff to show more than ordinary negligence. *See Williams v. Town of Phillipsburg,* 171 *N.J.Super.* 278, 286, 408 *A.*2d 827 (App.Div.1979) (reversing where trial court mixed "concepts of negligent conduct and palpably unreasonable conduct" when instructing jury on defendant's duty). The Comment to *N.J.S.A.* 59:4–2 states:

> This section recognizes the difficulties inherent in a public entity's responsibility for maintaining its vast amounts of public property. Thus it is specifically provided that when a public entity exercises or fails to exercise its discretion in determining what action should or should not be taken to protect against the dangerous condition that judgment should only be reversed where it is clear to the court that it was palpably unreasonable. *Bergen v. Koppenal,* 52 *N.J.* 478, 480, 246 *A.*2d 442 (1968). That decision was based on the thesis that a public entity's discretionary decisions to act or not to act in the face of competing demands should generally be free from the second guessing of a coordinate branch of Government.

This Court has explained that " 'palpably unreasonable' implies 'behavior that is patently unacceptable under any circumstance' and that 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.' " *Holloway v. State,* 125 *N.J.* 386, 403–04, 593 *A.*2d 716 (1991)(quoting *Kolitch v. Lindedahl,* 100 *N.J.* 485, 493, 497 *A.*2d 183 (1985)); *see also Johnson v. County of Essex,* 223 *N.J.Super.* 239, 257, 538 *A.*2d 448 (Law Div.1987)("To be palpably unreasonable, it must be action or inaction that is plainly and obviously without reason or reasonable

basis, capricious, arbitrary or outrageous."). The burden of proving that the public entity's action or inaction was palpably unreasonable rests with the plaintiff. *See Kolitch, supra,* 100 *N.J.* at 493, 497 *A.*2d 183; *Wooley v. Board of Chosen Freeholders,* 218 *N.J.Super.* 56, 62, 526 *A.*2d 1116 (App.Div.1987).

Although the question of palpable unreasonableness is generally one for the jury, it may be decided by the court as a matter of law in appropriate cases. *Wooley, supra,* 218 *N.J.Super.* at 62, 526 *A.*2d at 118. I am persuaded that this is such a case. Even if we accept plaintiff's other contentions of fact and law—that the declivity posed a substantial risk of injury to a foreseeable user exercising due care, and that the declivity was the result of a suspended repaving project by the Township—the Township's failure to devote its resources to the completion of repaving or to the amelioration of the declivity cannot be deemed palpably unreasonable. In view of the Township's responsibilities for maintaining significant areas of public property, we reasonably may infer, absent other evidence in the record, that the one inch to one and one-half inches declivity must necessarily be viewed as a maintenance item of low priority. Had the Township received prior complaints or reports of prior injuries with regard to the alleged dangerous condition, the issue might be viewed differently. Here, however, we have no evidence of prior injuries or complaints, as well as plaintiff's own admission that the small declivity was visible even after dark in the illuminated parking lot. No evidence exists in this record that would allow reasonable jurors to conclude that the Township's inaction with respect to this surface declivity was patently unacceptable in a way so manifest and obvious that no prudent person would approve of its inaction.

The standard for summary judgment in New Jersey "requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." *Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). This record contains insufficient evidence to

permit a rational factfinder to conclude that the Township's failure to correct the surface declivity in the parking lot was palpably unreasonable.

## V

For the reasons stated, I join in the Court's judgment but not in its opinion. Justice O'Hern joins in this opinion.

*For reversal & reinstatement*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.