**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4126-19

GIANI PETTY,

        Plaintiff-Appellant/
        Cross-Respondent,

v.

CITY OF NEWARK,

        Defendant-Respondent/
        Cross-Appellant.

_____

        Argued September 29, 2021 – Decided December 20, 2021

        Before Judges Whipple, Geiger, and Susswein.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1180-18.

        Martin F. Kronberg argued the cause for appellant/cross-respondent (Martin F. Kronberg, PC, attorneys; Martin F. Kronberg, on the briefs).

        Kenyatta K. Stewart, Corporation Counsel, argued the cause for respondent/cross-appellant (Kenyatta K. Stewart, attorney; Wilson D. Antoine and Azeem M. Chaudry, Assistant Corporation Counsels, on the briefs).

PER CURIAM

Plaintiff Giani Petty (plaintiff) appeals from the June 5, 2020 Law Division order granting summary judgment and dismissing her personal injury complaint against defendant City of Newark (City). Plaintiff's suit arose from the broken ankle she sustained after stepping into a pothole on a residential street. The trial court ruled that plaintiff failed to meet all the requisite elements of a public entity tort claim under the Tort Claims Act (TCA or Act), N.J.S.A. 59:1-1 to 12-3. Specifically, the trial court relied on the immunity feature codified in N.J.S.A. 59:2-3(d), which affords discretion to municipalities to allocate limited resources—in this instance, the resources available to identify and repair potholes. The trial court concluded that the discovery record, viewed in the light most favorable to plaintiff, did not demonstrate that the City's failure to repair the pothole she stepped in was palpably unreasonable.

After carefully reviewing the record in light of the arguments of the parties and the governing legal principles, we affirm. The record supports the trial court's determination that the City's decision to repair potholes within limits of its budgetary allocation for street maintenance was not palpably unreasonable. Because the allocation-of-resources immunity provision within TCA provides an independent and sufficient basis upon which to grant summary judgment and

2

dismiss plaintiff's complaint, we need not consider the issues raised in the City's cross appeal.

I.

We need only briefly summarize the facts and procedural history that are pertinent to the issues we address on appeal. On June 14, 2017, around 9:00 a.m., plaintiff tripped and "hung" her foot over a pothole near her residence on Boyd Street. She was walking to her car, which was parked on the street. Plaintiff fractured her ankle as a result of the fall. She subsequently underwent surgery to place a screw and band in her ankle.

Plaintiff filed a verified complaint on February 16, 2018.[1] In the course of ensuing discovery, the City presented evidence that the Mayor and Council approved the annual budget that allocates resources for street maintenance. The discovery record also includes a deposition of Dexter Cobbs, the Supervisor of street repairs, which explains the process by which the City identifies potholes and prioritizes repair efforts using available resources. That evidence shows that the City's asphalt crew and supervisor exercise their discretion by

---

[1] Because we need not decide the issues raised in the City's cross-appeal, we omit a discussion of facts concerning the City's contention that plaintiff failed to comply with the notice-of-claim requirements under N.J.S.A. 59:8-4 and N.J.S.A. 59:8-6.

submitting daily pothole repair reports that detail their plan each day to identify and fix potholes.

On May 1, 2020, after the parties had completed discovery, the City moved for summary judgment. On June 5, the trial court heard oral argument after which it granted summary judgment in the City's favor and dismissed plaintiff's complaint.

Plaintiff raises the following contentions for our consideration:

POINT I

AS A RATIONAL FACT-FINDER MAY DETERMINE THAT THE ACTION THE DEFENDANT CITY OF NEWARK TOOK TO PROTECT AGAINST THE POTHOLE AT ISSUE[—]OR ITS FAILURE TO TAKE SUCH ACTION[—]WAS PALPABLY UNREASONABLE, SUMMARY JUDGMENT WAS INAPPROPRIATE.

POINT II

DEFENDANT CITY OF NEWARK HAD BOTH ACTUAL AND CONSTRUCTIVE NOTICE OF THE CONDITION OF THE POTHOLE AT ISSUE AND THUS SUMMARY JUDGMENT ON BEHALF OF THE DEFENDANT IS INAPPROPRIATE.

POINT III

AS A RATIONAL FACT-FINDER MAY DETERMINE THAT THE POTHOLE AT ISSUE IS A DANGEROUS CONDITION, SUMMARY JUDGMENT IS INAPPROPRIATE.

The City raises the following points in response to plaintiff's arguments and in support of its cross-appeal:

POINT I

THE MOTION JUDGE PROPERLY DISMISSED PLAINTIFF'S COMPLAINT BECAUSE THE CITY IS IMMUNE UNDER N.J.S.A. 59:2-3 AND N.J.S.A. 59:4-6.

POINT II

PLAINTIFF FAILED TO COMPLY WITH THE NOTICE PROVISIONS OF THE TCA [TORT CLAIMS ACT].

POINT III

PLAINTIFF CANNOT STATE A CLAIM UNDER N.J.S.A. 59:4-2.

A. Plaintiff cannot establish that the condition that allegedly caused her injury was dangerous.

B. The City had no notice of and did not cause the street condition of which plaintiff complains.

POINT IV

PLAINTIFF'S DAMAGES ARE BARRED BY THE TCA.

II.

We begin our analysis by acknowledging the well-settled legal principles governing this appeal. We review the trial court's grant or denial of a motion

A-4126-19

for summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citations omitted); Christian Mission John 3:16 v. Passaic City, 243 N.J. 175, 184 (2020) (citation omitted); Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citation omitted). When reviewing a grant of summary judgment, an appellate court applies the same standard as the motion judge and considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see Rozenblit v. Lyles, 245 N.J. 105, 121 (2021); Christian Mission, 243 N.J. at 184; Friedman v. Martinez, 242 N.J. 449, 472 (2020); Shields v. Ramslee Motors, 240 N.J. 479, 487 (2020); Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

We next discuss the TCA. As the Supreme Court noted in Polzo v. Cnty. of Essex, 209 N.J. 51 (2012):

> the Legislature confined the scope of a public entity's liability for negligence to the prescriptions in the TCA. A public entity is only liable for an injury arising "out of an act or omission of the public entity or a public employee or any other person" as provided by the TCA. In other words, a public entity is "immune from tort liability unless there is a specific statutory provision"

A-4126-19

that makes it answerable for a negligent act or omission.

[Id. at 65 (citations omitted).]

The TCA provides in pertinent part:

a) A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity;

b) A public entity is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;

c) A public entity is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services; [and]

d) A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.

[N.J.S.A. 59:2-3.]

The City asserts that it is entitled to immunity under all four subsections of N.J.S.A. 59:2-3. We focus on subsection (d)—which we refer to as the

7

allocation-of-resources immunity provision—because that is the theory the trial court relied on to dismiss plaintiff's complaint. The contours and application of this statutory provision were carefully explained in Polzo—a case that specifically addressed the nature and scope of a public entity's liability with respect to the repair of potholes and depressions. The portions of the Court's opinion concerning the allocation-of-resources immunity feature inform our analysis of the matter before us.

In Polzo, the trial court granted summary judgment in favor of the defendant County and dismissed plaintiff's wrongful-death and survival-action lawsuit, finding that (1) "the County did not have actual or constructive notice of a dangerous condition of the roadway's shoulder and, alternatively," (2) "that the County did not act in 'a palpably unreasonable' manner by failing to repair the depression." Id. at 56. We reversed, "concluding that a jury could determine that the County had affirmatively caused a dangerous condition of property by not having in place a proactive program to inspect its roadway for the type of defect that was presumably responsible for the fatal accident in that case." Ibid. The Supreme Court reinstated the trial court's grant of summary judgment. Ibid. The Court noted that the County had inspected the subject roadway and filled in

potholes just five weeks before the decedent cyclist lost control of her bicycle.[2]

Ibid.  The Court ultimately held that "[e]ven when viewed in the light most favorable to plaintiff, we cannot conclude that the County was on constructive notice of a 'dangerous condition' on the shoulder of its roadway that 'created a reasonably foreseeable risk' of death."  Ibid.  Importantly for purposes of the issue before us in the present matter, the Court in Polzo also held that it could not conclude that "the County's failure to correct this depression before the tragic accident was 'palpably unreasonable.'"  Ibid.  The Court explained,

> It is fair to say that in view of the County's considerable responsibility for road maintenance in a world of limited public resources, the depression here, barely one-and-one-inches in depth [and two feet in diameter] on the roadway's shoulder, might not have been deemed a high priority, even if the County were on notice of its presence.
>
> All in all, even when the issue is viewed favorably to plaintiff, we cannot conclude that the County acted in a palpably unreasonable manner by failing to "protect against" the depression before the tragic accident in this case.

---

[2]  We note that plaintiff attempts to distinguish Polzo because the Court in that case addressed a bicycle accident caused by a pothole that the county failed to notice, whereas in the present case, plaintiff argues that "at least twelve police vehicles intentionally [drove] around the pothole."  That distinction, however, has no bearing on the application of the allocation-of-resource theory of immunity codified in N.J.S.A. 59-2-3(d).

[Id. at 77–78.]

The Court further instructed that the term "palpably unreasonable implies behavior that is patently unacceptable under any circumstance." Id. at 75 (citing Muhammad v. N.J. Transit, 176 N.J. 185, 195–96 (2003)). "When a public entity acts in a palpably unreasonable manner, it should be 'obvious that no prudent person would approve of its course of action or inaction.'" Id. at 76 (quoting Muhammad, 176 N.J. at 195–96). The Court stressed that "[t]he duty to refrain from palpably unreasonable conduct differs in degree from the ordinary duty of care that is owed under the negligence standard." Ibid.

The Court added,

> This Court does not have the authority or expertise to dictate to public entities the ideal form of road inspection program, particularly given the limited resources available to them. See N.J.S.A. 59:1-2 (declaring that government's "power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done").

[Id. at 69].

Applying these foundational principles to the matter before us, we agree with the trial court. Plaintiff has failed to show that the City was palpably unreasonable in the manner in which it exercised its discretion to allocate the limited resources that were available to remediate potholes. As the trial court

10

recognized, the City offered evidence that the City's mayor and council approved the annual budget, laying out the resources allocated to road maintenance. The City also produced evidence that the City asphalt crew and its supervisor submitted pothole repair work reports in which they detailed their intentions to fix dozens of potholes each day. That evidence demonstrates how the City exercises its discretion in choosing which potholes to fix on a given day from the large universe of potholes that form on City streets. Nothing in the record supports plaintiff's contention that the City's exercise of discretion was palpably unreasonable for failing to fix the particular pothole she regrettably stepped in. We add that the record does not show, for example, that the City received complaints regarding that specific pothole. Id. at 76–77 (discussing Garrison v. Twp. of Middleton, 154 N.J. 282 (1998). Accordingly, while the City's efforts to prioritize the remediation of potholes were certainly not perfect—viewed through the lens of hindsight—those efforts were not so "palpably unreasonable" as to defeat its entitlement to tort claims immunity under N.J.S.A. 59:2-3(d).

As we have already noted, because we affirm the trial court's ruling that the City enjoyed immunity under N.J.S.A. 59:2-3(d), we need not address the issues raised in the City's cross-appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                      A-4126-19