**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2525-15T1

MARY LOU RAPP AND
WILLIAM L. RAPP,

    Plaintiffs-Appellants,

v.

VILLAGE OF RIDGEFIELD
PARK, SHADE TREE COMMISSION
OF THE VILLAGE OF RIDGEFIELD
PARK, ERDWHIN ESCARRET AND
YAMILA ESCARRET,

    Defendants-Respondents.

_____

Argued June 6, 2017 — Decided July 13, 2017

Before Judges Messano and Grall.

On appeal from the Superior Court of New
Jersey, Law Division, Bergen County, Docket
No. L-5188-14.

Thomas J. Giblin argued the cause for
appellants (Giblin & Lynch, attorneys; Mr.
Giblin and Eileen Lackey, on the briefs).

Christopher C. Botta argued the cause for
respondents (Botta & Associates, L.L.C.,
attorneys; Natalia R. Angeli, of counsel and
on the brief; Renee F. McCaskey, on the
brief).

PER CURIAM

Plaintiffs Mary Lou Rapp and William L. Rapp appeal the Law Division's January 22, 2016 order that granted summary judgment to defendants, Village of Ridgefield Park (the Village) and the Shade Tree Commission of the Village of Ridgefield Park (the STC), and dismissed plaintiffs' complaint.[1] The judge concluded plaintiff failed to present a prima facie case of liability under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, in two respects. He determined plaintiff did not demonstrate defendants were on actual or constructive notice of a dangerous condition that proximately caused plaintiff's injuries. N.J.S.A. 59:4-3. Secondly, the judge concluded plaintiff failed to demonstrate she suffered the permanent loss of a bodily function that was substantial. N.J.S.A. 59:9-2(d); Brooks v. Odom, 150 N.J. 395, 406 (1997). The judge also granted the STC summary judgment, concluding it was immune from liability pursuant to N.J.S.A. 40:64-14.

I.

The motion record revealed that plaintiff was walking her dog near her home when she tripped and fell on a raised portion of the

---

[1] Plaintiffs are husband and wife, and William L. Rapp's claims are wholly-derivative of those brought by his wife. Therefore, the singular, "plaintiff," used throughout the balance of the opinion refers to Mary Lou Rapp.

sidewalk in front of the residence of defendants Erdwhin and Yamila Escarret.[2] At their depositions, the Escarrets collectively testified that in 2007, they complained to the Village about a tree in front of their home, which roots were causing the upheaval of the sidewalk. The tree was removed, and the Escarrets neither made any further complaints nor received any complaints from others regarding the sidewalk. Mrs. Escarret indicated on a photograph where that tree was, and there is a dispute as to whether plaintiff fell in that same location on the sidewalk. However, Mrs. Escarret also stated that the sidewalk in front of her house was always uneven. Approximately one year after plaintiff's accident, Mr. Escarret repaired the sidewalk in an attempt to make it more level.

The superintendent of the Village's Department of Public Works (DPW), Alan O'Grady, had served in that post for twenty-three years and lived across the street from the Escarret home for thirty-five years. He testified at deposition that the sidewalks on the street were in "bad condition," "uneven and . . . [had] become dislodged" because of trees. O'Grady had complained to the STC about an uplifted sidewalk in front of his own home, and the STC had a private contractor repair the sidewalk.

---

[2] The judge granted the Escarret defendants summary judgment. Plaintiff has not appealed from that order.

 A-2525-15T1

In 2007, O'Grady personally inspected the front of the Escarret home and recommended removal of a tree because it had "lifted up" the sidewalk. O'Grady said either DPW, or a private company, repaired the sidewalk by lifting the sidewalk and replacing it after removing the tree's roots. He also stated that DPW removed two other trees from a property on the same street approximately three months before plaintiff fell.

According to O'Grady, the STC fielded complaints from homeowners about uplifted sidewalks on their properties caused by trees or tree roots. The STC would evaluate the situation and hire a private contractor to repair the sidewalk and thereafter reimburse the homeowner for the costs. When asked for his personal "assessment of whether or not" the sidewalks on that particular street were dangerous, O'Grady responded, "I'm sure . . . some of the sidewalks are dangerous, but . . . it's my opinion, it's the homeowner that's responsible . . . ."

The Village created the STC by ordinance in 1979. The ordinance forbid any person from "lay[ing] any sidewalk" that interfered with or injured a tree without the STC's consent. One of the commissioners testified at deposition that the tree removed from the Escarret home was not replaced because the strip of land between the curb and sidewalk in which it was planted was too narrow. The Village also enacted a property maintenance ordinance

A-2525-15T1

that required all property owners to keep sidewalks "in a proper state of repair" or replace them if necessary.

As a result of her fall, plaintiff suffered a non-displaced fracture of her elbow that did not require surgery. She also suffered a displaced fracture of her patella and underwent surgery the day after the incident. The procedure was by "open reduction" and "internal fixation," requiring the installation of hardware, some of which remains in plaintiff's knee.

Plaintiff's complaints required further non-surgical interventions, including injections and manipulations under anesthesia. More than one year after her fall, plaintiff underwent arthroscopic surgery. Although her surgeon reported plaintiff had achieved full range of motion, he noted her risk for "posttraumatic arthritis," and stated she "had permanent alterations in her knee mechanics" as a result of the fall. Plaintiff's medical expert for purposes of this litigation opined that her knee will not heal to normal function, she will continue to experience arthritic changes as she resumes normal activities and she will need future medical treatment.

Plaintiff, who worked as a medical records clerk, was out of work for seven months. She also worked part-time in a department store but never returned to that position because she was unable to stand for long periods. Plaintiff testified regarding continued

daily pain in her knee, an inability to bend or kneel and some restrictions on her activities of daily living.

## II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 414 (2016) (citing Mem'l Props., L.L.C. v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). We first determine whether the moving party demonstrated there were no genuine disputes as to material facts. Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 230 (App. Div.), certif. denied, 189 N.J. 104 (2006).

> [A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).]

We then decide "whether the motion judge's application of the law was correct." Atl. Mut., supra, 387 N.J. Super. at 231. In this regard, "We review the law de novo and owe no deference to the trial court . . . if [it has] wrongly interpreted a statute." Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009).

Generally speaking, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)). A public entity may be liable if "a negligent or wrongful act or omission" of its employee "create[s] [a] dangerous condition" or, if it had "actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." N.J.S.A. 59:4-2(a) and (b). As the Court has repeatedly stated,

> [I]n order to impose liability on a public entity pursuant to [N.J.S.A. 59:4-2], a plaintiff must establish the existence of a "dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."
>
> [Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2; accord Polzo v. Cty. of Essex, 196 N.J. 569, 579 (2008) ("Polzo I").]

"Th[e]se requirements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity

alleging that such entity is liable due to the condition of public property must fail." Polzo I, supra, 196 N.J. at 585.

The TCA treats public sidewalks like other public property. Norris v. Borough of Leonia, 160 N.J. 427, 446 (1999). "Generally, a sidewalk is classified public or private based on who owns or controls the walkway, not based on who uses it." Qian v. Toll Bros. Inc., 223 N.J. 124, 138 (2015).

Plaintiff asserts that defendants were not entitled to summary judgment on any essential element of her cause of action. Given that we apply the same standard as the trial court when reviewing a summary judgment record, we address the issues the motion judge did not reach. Defendants do not contest that plaintiff fell on a public sidewalk, or that they exerted control over it. Rather, defendants contend plaintiff failed to adduce sufficient proof that the sidewalk was a "dangerous condition," of which they had actual or constructive notice, and their conduct was "palpably unreasonable." We disagree.

"The [TCA] defines a 'dangerous condition' as 'a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.'" Garrison v. Twp. of Middletown, 154 N.J. 282, 286-87 (1998) (quoting N.J.S.A. 59:4-1(a)). "A dangerous condition under [the TCA] refers to the

'physical condition of the property itself and not to activities on the property.'" Wymbs v. Twp. of Wayne, 163 N.J. 523, 532 (2000) (quoting Levin v. Cty. of Salem, 133 N.J. 35, 44 (1993)).

Here, the motion judge did not decide whether the upraised sidewalk slab was a "dangerous condition" for purposes of summary judgment, and, instead, granted defendants' motion based upon lack of notice. In opposing defendant's summary judgment motion, plaintiff was entitled to all favorable evidence and inferences in the motion record. R. 4:46-2. It is undisputed that plaintiff was walking her dog when she fell, i.e., she was using the sidewalk in a reasonably foreseeable manner. Plaintiff's testimony, along with that of the homeowners and O'Grady, was sufficient to demonstrate the sidewalk was significantly uneven. Her expert engineer opined that the uneven slab was a tripping hazard. Defendants refer to photographs demonstrating the differential between slabs was minimal. However, the photos were taken after plaintiff's fall and after Mr. Escarret's attempted repair.

Mr. Escarret testified that he attempted to correct the unevenness of the sidewalk approximately one year after the accident. While we do not determine whether this evidence is admissible at trial, plaintiff was entitled to its consideration for purposes of opposing summary judgment. See Harris v. Peridot Chem. (N.J.), Inc., 313 N.J. Super. 257, 293 (App. Div. 1998)

("[E]vidence of subsequent corrective measures has long been permitted in New Jersey to prove 'the condition existing at the time of the accident.'" (quoting Lavin v. Fauci, 170 N.J. Super. 403, 407 (App. Div. 1979))). In short, plaintiff raised a genuine factual dispute about the dangerous condition of the sidewalk.

N.J.S.A. 59:4-3 provides:

> a. A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

However, "the mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Polzo I, supra, 196 N.J. at 581 (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). It follows that absent actual or constructive notice, the public entity cannot have acted in a palpably unreasonable manner. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002).

Palpably unreasonable conduct "means 'behavior that is patently unacceptable under any circumstance' and . . . it must

be 'manifest and obvious that no prudent person would approve of [the public entity's] course of action or inaction.'" Pandya v. State, Dep't. of Transp., 375 N.J. Super. 353, 372 (App. Div. 2005) (alteration in original) (quoting Holloway v. State, 125 N.J. 386, 403-04 (1991)). In most circumstances, "[p]alpable unreasonableness is a question of fact." Vincitore, supra, 169 N.J. at 130.

Here, defendants had actual notice of the condition of the sidewalks along the street where plaintiff fell, removed a tree that upheaved the sidewalk at or near the spot of her fall, and attempted to repair the sidewalk after the tree was removed by resetting the slabs, although the record is unclear whether the DPW or a private contractor made the repairs. In addition, the Village's superintendent of public works had actual knowledge of the poor condition of the sidewalks, and the STC was aware that trees planted along that street had outgrown the narrow strip of land between sidewalk and curb. This evidence was sufficient to defeat summary judgment on the issue of knowledge.

Lastly, as noted, whether the public entity's conduct was palpably unreasonable is generally a factual issue for the jury to decide, however "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases."

Maslo, supra, 346 N.J. Super. at 350 (citing Garrison, supra, 154 N.J. at 311). The motion judge did not address this issue.

The record reveals the STC employed a process to identify and remediate problem trees in the Village. However, in this case, the issue was not a problem tree, but, rather the condition of the public sidewalk _after_ a tree had been removed. One of the factors to consider in determining whether a jury could find the public entity's conduct palpably unreasonable is whether there was actual notice of the dangerous condition. See, e.g., Posey ex rel. Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 191 (2002) (holding "a jury could conclude that it was palpably unreasonable for the Township and or the County not to warn or otherwise protect against the dangerously deep pond of which they had actual notice"). In this case, a jury could conclude defendants had actual notice of the dangerous condition of the sidewalk, based upon their activity at the site in 2007, continued complaints about sidewalk upheaval at other addresses on the same street and O'Grady's particularized knowledge of the conditions of the sidewalks along the street. Whether defendant's conduct was palpably unreasonable presented a jury question.

As noted, the motion judge also concluded defendant failed to meet the threshold requirements of N.J.S.A. 59:9-2(d). That provision of the TCA provides:

> No damages shall be awarded against a public entity . . . for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,6000.00.[3]
>
> [Ibid.]

We disagree with the judge's conclusion.

Plaintiff argues her circumstances are similar to those presented in Gilhooley v. County of Union, 164 N.J. 533 (2000). There, the plaintiff suffered a fractured patella that required repair by surgical intervention via open reduction and internal fixation. Id. at 536-37. She was left with a scar, and, although she "returned to work in her full capacity," the plaintiff continued to experience stiffness and pain in her knee. Id. at 537.

In reversing our affirmance of the trial court's grant of summary judgment, the Court said:

> We are satisfied that the Legislature intended to include within the notion of aggravated cases those involving permanent injury resulting in a permanent loss of normal bodily function even if modern medicine can supply replacement parts to mimic the natural function. As is the case with dismemberment and disfigurement, when pins, wires, mechanisms and devices are required to make

---

[3] Plaintiff's medical expenses in this case exceeded $248,000.

the plaintiff normal, the statutory standard is met. The fact that a physician has jury-rigged the knee to function with pins and wires in no way inhibits the characterization of that injury as the permanent loss of a bodily function.

[Id. at 542-43.]

Plaintiff's situation is no different. Viewing the evidence in the most favorable light to plaintiff, the grant of summary judgment on this ground was improper.

Plaintiff, however, fails to assert any argument regarding the grant of summary judgment to the STC. An issue not briefed is deemed waived on appeal. N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div.), certif. denied, 222 N.J. 17 (2015).

We affirm the grant of summary judgment to the STC. We reverse the grant of summary judgment to the Village.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION